UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-796-GNS-CHL

JAMIE CHAMBERS,                                                              Plaintiff,

v.

HIBU, INC.,                                                                  Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Compel (DN 35) filed by plaintiff Jamie Chambers. Defendant Hibu, Inc. filed a response (DN 36), and plaintiff filed a reply (DN 37). Therefore, this matter is ripe for review.

### I.  BACKGROUND

Plaintiff was a sales representative for defendant for seven years, holding several positions in sales during that time. (DN 1-1 at 3.) Plaintiff claims that, while employed by defendant, she "informed her superiors . . . that her medical providers had advised that her symptoms indicated she had multiple sclerosis ("MS")." (*Id.* at 3.) Plaintiff was terminated by defendant in June 2014. (*Id.*)

Plaintiff brought claims under the Americans with Disabilities Act, Kentucky Civil Rights Act, and Kentucky Equal Opportunities Act. (*Id.* at 2.) Plaintiff alleges that defendant failed to make reasonable accommodations for her disability during her employment, and that she was terminated because of her disability. (*Id.* at 3-4.) Defendant, on the other hand, contends that plaintiff was terminated for a legitimate, non-discriminatory reason, specifically

1

because of her sales performance as compared to other sales representatives in the region. (DN 36 at 2.)

At issue in the Motion to Compel are the formulas used by defendant set objectives and rankings for its sales representatives compile a performance review report ("PRR"). PRRs are the means by which defendant tracks and ranks performance for its sales representatives, including plaintiff. (DN 36-1 at 1.) There appears to be no dispute that from 2011 to 2014 plaintiff's overall performance rating had generally declined as reflected in the year-end PRRs for 2011-2014. Plaintiff asserts that the decline tracks the same period in which she began experiencing symptoms of MS. Thus, plaintiff contends that defendants stated reason for terminating her – her performance at work – is pre-textual. Plaintiff therefore asserts that she is entitled to the formulas used to compile the PRRs at issue.

Defendant asserts that the objectives, rankings, and methodology for calculating the rankings are set forth in the year-end PRRs provided. Defendant argues that, first and foremost, plaintiff has not made a discovery request for the production of the formulas used to set objectives and/or rankings; rather, plaintiff has only propounded interrogatories, which defendant has answered. Defendant also asserts that it has provided other discovery that adequately explains the sales objectives and rankings and the method by which they were applied to plaintiff.

Second, defendant asserts that there is no reason to dispute the accuracy of the information set forth in the year-end PRRs. Defendant therefore argues that there is sufficient information to test its legitimate non-discriminatory reason for terminating plaintiff. Defendant asserts that it is undisputed that objectives for sales representatives are set by the Sales Planning

2

Department, not by local sales managers, and that they are set on an across-the-board basis for all sales representatives with variances based only on title or geographic market. Defendant claims that the Sales Planning Department played no role in the decision to terminate plaintiff's employment.

Third, defendant argues that the requested documents do not exist, and it should not be compelled to create new documents. Defendant avers that plaintiff can ascertain the information that she needs to determine if it applied its sales objectives in a discriminatory manner by reviewing the already-produced year-end PRRs and other record evidence.

In her reply, plaintiff avers that defendant's position is inconsistent. On one hand, defendant claims that the formulas and criteria were applied consistently across the board, and, on the other hand, providing the formulas would be unduly burdensome because it would have to reconstruct the inconsistent mutations of the formulas that developed during the year. Plaintiff asserts that the formulas go to the heart of the matter, *i.e*., defendant's proffered non-discriminatory reason for terminating her. Plaintiff states that the record confirms inconsistent applications of the formulas. Plaintiff also argues that, contrary to defendant's assertions, the year-end PRRs (and the record evidence) do not provide all the information that she needs to test defendant's proffered non-discriminatory reason for her termination. Finally, plaintiff argues, among other things, that production would not be unduly burdensome, that the initial Excel spreadsheets used to determine sales objectives that have been located by defendant should be produced, and the scope of the discovery could be limited to the region in which plaintiff was employed.

## II. DISCUSSION

The Court will begin by attempting to simplify the description and significance of the PRRs and the objectives contained therein. The Court observes that the explanation proffered by defendant is not entirely clear or exhaustive. By saying this, the Court is not accusing defendant of hiding the ball; rather, this may simply be reflective of the complicated nature of the system by which objectives are determined and tracked. That being said, just because a system may be complicated does not mean that a plaintiff is not entitled to an understandable and thorough explanation.

According to Lisa Mueller, vice president of the Sales Planning Department, a PRR shows each sales representative's sales objectives; the representative's performance against each of those objectives; and the ranking of that representative's performance in each objective against the other representatives in the same geographic region. (DN 36-1 at 2.) Rankings for each objective are converted into scores based on the weighting assigned to each objective; those scores are then added together for a cumulative score. (*Id.*)

Mueller states that, depending on the objectives, they are set either company-wide or market wide for all sales representatives with the same title. (*Id.*) Mueller then addresses (1) sales objectives measured by number of product sales or number of new customers; (2) sales objectives that are measured by dollar amounts; and (3) "Total Sales" or "Total Revenue" objective. (*Id.* at 3.) With respect to (1) Mueller states that the number is set at the same number for all sales representatives with the same title across the country. (*Id.*) With respect to (2), Mueller states that the number is set using the same criteria for all sales representatives with the same title in the geographic market. (*Id.*) However, Mueller states the "assignment" amount –

or the dollar amount spent by the sales representative's assigned customer base during the prior year – in the "Renewal and Increase" objective differs by title and by sales representative, with more senior representatives typically receiving larger assignments. (*Id*.) With respect to (3), Mueller states that the Total Sales objective measures the total dollar amount of sales – whether renewal, increase, or new – to be sold during the year; this objective is determined by adding the Renewal and Increase dollar objective and New Business dollar objective.

Despite the objectives being uniformly set, Mueller states that the year-end PRR may differ in some respects from objectives determined before the start of the year. (*Id*. at 3-4.) So, according to Mueller, while the objectives are applied uniformly, they may be adjusted based on company-wide changes (*e.g*., directives to sell more websites); changes to representative assignments (*e.g*., redistributing accounts among representatives because of representative departures); individual adjustments to objectives due to promotions, demotions, leave of absences, or accommodations for temporary inability to work a full-time schedule; and proration of objectives for new hires during the year. (*Id*. at 4.) Mueller states that, when objectives are adjusted based on any of these events, the objectives in the PRR will reflect that change from the date of the adjustment forward, but that the original model and formulas are not revised to reflect the adjustments. (*Id*.)

Mueller asserts that the determination of sales objectives is done approximately fifteen months in advance of the year-end PRRs and is contained in initial Excel spreadsheets. Because of the adjustment of the objectives for the reasons stated above, the initial Excel spreadsheets do not correspond with the year-end PRRs objectives. (*Id*. at 7.) As a result, Mueller asserts that the initial Excel spreadsheets do not match the objectives in the year-end PRRs produced and

relevant to this litigation. (*Id*.) Mueller also states that not every objective is the result of the application of a formula; however, the methodology is nonetheless an objective process applied in the same fashion across the board. Mueller states that some but not all of the initial Excel spreadsheets have been located. (*Id*.)

Mueller further asserts that, to comply with plaintiff's request for the formulas used to create the objectives in the year-end PRRs for the years in question, someone would have to create documents that do not exist. (*Id*.) Specifically, Mueller asserts that this "would require identifying all Company-wide changes to objectives between the time of the original calculations and year-end, identifying all changes to representative assignments between the time of the original calculations and year-end and identifying all promotions, demotions, leaves of absence and adjustments for temporary inability to work a full time schedule and hire dates for all representatives who were hired during the year." (*Id*. at 7-8.) Muller states that defendant would also have to develop revised models and formulas that match the actual objectives for the sales representatives on the year-end PRRs.

In sum, the Court apprehends the issue to be this: the initial sales objectives are set by formulas or criteria that are (generally) uniformly applied. However, those objectives can be adjusted for a variety of reasons as described by Mueller; as a result, the objectives in the year-end PRRs may have been altered from the initial sales objectives set. Furthermore, sales representatives are ranked on their own performance against each objective and then ranked against each other. The Court apprehends plaintiff's argument to be that she should be permitted to discover whether the objectives set for her were done in a manner that caused her overall ranking to fall. In other words, were the objectives manipulated in a way that set plaintiff up to

fail? Thus, the Court understands that plaintiff is requesting the formulas used to determine the original objectives; the Court also understands plaintiff to seek information regarding how the original objectives were altered to determine the year-end PRRs.

Rule 26(b) permits discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

With respect to plaintiff's request for the formulas used to determine the initial objectives that were used in the year-end PRRs, the Court finds that plaintiff is entitled to an explanation of how those initial objectives were determined for *plaintiff and limited group of other sales representatives in her region*.[1] At this point, the Court is not convinced that plaintiff needs the initial Excel spreadsheets in native format; this is because the Court simply does not have enough information before it to determine whether the actual formulas are necessary.

That being said, the Court finds that defendant shall produce a PDF copy of the available initial Excel spreadsheets (that culminated in the year-end PRRs at issue in this lawsuit) along with witness testimony and/or interrogatory answer(s) that explain how the initial objectives were determined for plaintiff and the limited group of sales representatives in her region. In

---

[1] The Court notes that it is not clear how many sales representatives were in plaintiff's region during each relevant year. Nonetheless, in an attempt to narrow the field of discovery for both parties, the Court will direct counsel to confer and attempt to limit this group of sales representatives to (1) those in plaintiff's region; (2) seven (7) sales representatives per relevant year and; (3) to further identify the individuals in this group by name. To the extent these parameters need to be adjusted in accordance with this memorandum opinion and order, counsel are ordered to confer and attempt to resolve any dispute before requesting a telephonic conference.

other words, defendant owes plaintiff an explanation, either via document or testimony or both, with respect to how the initial sales objectives were determined for plaintiff and for the limited group of sales representatives in her region, so that plaintiff can compare that to the year-end PRRs.

With respect to the changes to objectives set for plaintiff and the limited group of sales representatives in her region, the Court agrees that defendant should not be compelled to create documents or formulas that do not exist. That being said, the Court finds that plaintiff is entitled to specific information regarding how and why the original objectives were changed, if at all, for plaintiff and the limited group of sales representatives in her region. While defendant is not required to create documents to answer this question, it should be able to provide an explanation via testimony or interrogatory answers. While the defendant has provided some information in this regard, it is not specific enough.

The Court has taken the burden of production on defendant into consideration in its ruling. The Court understands that defendant asserts that the original formulas and criteria were applied equally across the board. However, based on Mueller's explanation, this is not an entirely thorough explanation – for example, as Mueller states, the assignment amounts in the Renewal and Increase objective (which is used to determine Total Sales or Total Revenue) differ based on title and representative, *with more senior representatives typically having larger assignments*; this indicates that there was some discretion involved in the objective-setting process. Defendant should explain how that determination was made with respect to plaintiff and the limited group of sales representatives in her region, not just as general matter.

Finally, the Court understands that defendant is concerned about the possible disclosure of its proprietary or confidential information. To the extent that this remains an issue, defendant and plaintiff shall confer and enter into an agreement whereby plaintiff agrees to limit use of any information to this litigation and to return and/or destroy any materials at the conclusion of this litigation that defendant deems confidential and proprietary.

Accordingly,

IT IS ORDERED that the Motion to Compel (DN 35) is GRANTED IN PART and as follows:

- The discovery ordered SHALL be limited to plaintiff and a limited group of other sales representatives in her region. This limited group of sales representatives shall (1) include those in plaintiff's region; (2) include seven representatives per relevant year; and (3) be identified by name.

- Defendant SHALL PRODUCE to plaintiff in PDF format the initial Excel spreadsheets reflecting the original sales objectives that were ultimately used as the basis of the relevant year-end PRRs for plaintiff and the limited group of other sales representatives in her region. If the Excel spreadsheet for a particular year cannot be located, defendant shall explain, in supplemental interrogatory answers, the efforts made to locate same.

- Defendant SHALL PROVIDE an explanation, either through testimony or supplemental interrogatory answers or both, regarding how the initial sales objectives were determined for plaintiff and the limited group of other sales representatives in her region.

- Defendant SHALL PROVIDE an explanation, either through testimony or supplemental interrogatory answers or both, regarding how and why the original objectives were changed, if at all, for plaintiff and the limited group of sales representatives in her region as reflected in the year-end PRRs.

- If necessary counsel shall confer and enter into agreement regarding the use of any confidential or proprietary information disclosed by defendant during the course of this litigation.

The Motion to Compel is DENIED IN ALL OTHER RESPECTS.

cc: Counsel of record